**ORIGINAL**

*FILED*

*2010 FEB 17 P 2: 21*

1  Kit A. Pierson
   Benjamin D. Brown (Bar No. 202545)
2  Brent W. Johnson
   George F. Farah
3  **COHEN, MILSTEIN, SELLERS & TOLL PLLC**
   1100 New York Avenue, N.W.
4  Suite 500, West Tower
   Washington, DC 20005
5  Telephone: (202) 408-4600
   Facsimile: (202) 408-4699
6  kpierson@cohenmilstein.com
   bbrown@cohenmilstein.com
7  bjohnson@cohenmilstein.com
   gfarah@cohenmilstein.com
8
   Joseph J. Tabacco, Jr. (Bar No. 75484)
9  Christopher T. Heffelfinger (Bar No. 118058)
   Matthew W. Ruan (Bar No. 264409)
10 **BERMAN DEVALERIO**
   One California Street, Suite 900
11 San Francisco, CA 94111
   Telephone: (415) 433-3200
12 Facsimile: (415) 433-6382
   jtabacco@bermandevalerio.com
13 cheffelfinger@bermandevalerio.com
   mruan@bermandevalerio.com
14

**EDL**

*Counsel for Plaintiff and the Proposed Class*

15

16                     UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

                              **10**              **676**

18 PATRICK KEYES, on behalf of himself and      )
   all others similarly situated,               ) Case No. _____
19                                              )
                    Plaintiff,                   )
20                                              )
        v.                                       )
21                                              )
   SONY CORPORATION; SONY OPTIARC              ) **CLASS ACTION COMPLAINT**
22 INC.; SONY OPTIARC AMERICA INC.;           )
   TOSHIBA CORPORATION; SAMSUNG               ) **JURY DEMAND**
23 ELECTRONICS COMPANY, LTD,;                 )
   TOSHIBA SAMSUNG STORAGE                     )
24 TECHNOLOGY CORPORATION;                    )
   HITACHI, LTD.; HITACHI-LG DATA             )
25 STORAGE INC.; and LG ELECTRONICS           )
   INC.,                                        )
26                                              )
                    Defendants.                  )
27

28

1    Plaintiff Patrick Keyes, on behalf of himself and all others similarly situated (the "Class"),

2 brings this action for treble damages, injunctive relief, and the costs of this lawsuit under the

3 antitrust laws of the United States, Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1

4 ("Sherman Act") and Section 4 of the Clayton Antitrust Act of 1914, 15 U.S.C. § 15 ("Clayton

5 Act") against the defendants named herein.    The allegations made herein are based upon

6 information and belief, except those as to Plaintiff, which are made with personal knowledge.

7  **I.    NATURE OF THE ACTION**

8    1.    As set forth in more detail below, Defendants named herein, together with their co-

9 conspirators, engaged in a conspiracy to fix, raise, maintain and stabilize artificially the price at

10 which Optical Disc Drives and products containing Optical Disc Drives were sold in the United

11 States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

12    2    Optical Disc Drives include CD, DVD, and Blu-ray drives, including those used in

13 personal computers, video game consoles, and other electronics. "Optical Disc Drive Products"

14 refers herein to Optical Disc Drives and products incorporating Optical Disc Drives that are

15 manufactured by any of the Defendants, their subsidiaries, affiliates or co-conspirators.

16    2.    Beginning in January 2005, Defendants engaged in a conspiracy to fix, raise, or

17 maintain the prices of Optical Disc Drive Products sold in the United States.  As a result of

18 Defendants' unlawful conduct, Plaintiff and the other members of the Class paid higher prices for

19 Optical Disc Drive Products than they would have paid in a competitive market.

20    4.    Plaintiff brings this antitrust class action for treble damages, injunctive relief, and

21 the costs of suit on behalf of all persons and entities that directly purchased an Optical Disc

22 Drive, or a product incorporating an Optical Disc Drive, between January 2005 and the present in

23 the United States from Defendants, their subsidiaries or affiliates, or their co-conspirators (the

24 "Class Period").

25  **II.    JURISDICTION AND VENUE**

26    5.    Plaintiff brings this action for treble damages arising from Defendants' violation of

27 Section 1 of the Sherman Act, 15 U.S.C. § 1, and for injunctive relief and other relief as the Court

28 deems fair and reasonable, including the costs of suit and reasonable attorneys' fees.

1    6.    The Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the

2    Clayton Act, 15 U.S.C. § 15 and 26 and 28 U.S.C. §§ 1331 and 1337.

3    7.    Venue is proper in this District pursuant to Section 12 of the Clayton Act,

4    15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events

5    giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected

6    interstate trade and commerce was carried out in District, and one or more of the Defendants

7    reside in this District.

8    8.    Defendants engaged in interstate commerce, including within this District.

9    **III.    PARTIES**

10    **Plaintiff**

11    9.    Patrick Keyes resides at 1115 12th street, NW, Unit B-1, Washington, DC 20005.

12    Plaintiff purchased an Optical Disc Drive Product directly from one of the Defendants during the

13    Class Period and suffered injury as a result of Defendants' unlawful conduct.

14    **Defendants**

15    10.    Hitachi-LG Data Storage Inc. ("Hitachi-LG") is a Japanese and Korean Company

16    with their principal places of businesses at 4F MSC Center Bldg., 22-23, Kaigan 3-chome,

17    Minato-ku, Tokyo, 108-0022, Japan and LG Gasan Digital Center, 459-9, Gasan-dong,

18    Geumcheon-gu, Seoul, 153-803, Korea. Hitachi-LG is a joint venture between Defendants

19    Hitachi and LG. Litachi, Ltd owns 51% of the stock in Hitachi-LG and LG Electronics, Inc.

20    owns the remaining 49%. Between 2001 and 2005 Hitachi-LG sold over 170 million Optical

21    Disc Drives, generating approximately $5.5 billion in total revenues. During the Class Period,

22    Hitachi-LG manufactured, sold and/or distributed Optical Disc Drive Products to customers

23    throughout the United States either directly or through its affiliated companies.

24    11.    Hitachi, Ltd. ("Hitachi") is a Japanese company with its principal place of business

25    at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, 100-8280, Japan. Hitachi owns 51% of

26    Defendant Hitachi-LF Data Storage Inc. During the Class Period, Hitachi manufactured, sold

27    and/or distributed Optical Disc Drive Products to customers throughout the United States either

28    directly or through its affiliated companies.

1    12.    LG Corporation ("LG") is a Korean company with its principal place of business

2  at LG Twin Towers, 20 Youido-dong, Yeongdeungpo-gu, Seoul, 150-721, Korea. LG owns 49%

3  of Defendant Hitachi-LG Data Storage Inc. During the Class Period, LG manufactured, sold

4  and/or distributed Optical Disc Drive Products to customers throughout the United States either

5  directly or through its affiliated companies.

6    13.    Samsung Electronics Co., Ltd. ("Samsung") is a Korean company with its

7  principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul

8  100-742, Korea.    Samsung Electronics owns 49% of Defendant Toshiba Samsung Storage

9  Technology Corporation.    During the Class Period, Samsung manufactured, sold and/or

10  distributed Optical Disc Drive Products to customers throughout the United States either directly

11  or through its affiliated companies.

12    14.    Sony Corporation ("Sony Corp.") is a Japanese company with its principal place of

13  business at 1-7-1 Konan, Minato-ku, Tokyo, 108-0075, Japan.    Sony Corp. is the parent

14  corporation of Defendant Sony Optiarc Inc. and ultimate parent of Defendant Sony Optiarc

15  America, Inc. During the Class Period, Sony Corp. manufactured, sold and/or distributed Optical

16  Disc Drive Products to customers throughout the United States either directly or through its

17  affiliated companies.

18    15.    Sony Optiarc Inc. ("Sony Optiarc") is a Japanese company with its principal place

19  of business at 4-16-1 Okata, Atsugi-Shi, Kanagawa, 243-0021, Japan. Sony Optiarc is a wholly-

20  owned subsidiary of Defendant Sony Corp. and the parent corporation of Defendant Sony Optiarc

21  America, Inc. Prior to 2008, when NEC Corporation sold its interest to Sony Corp., Sony Optiarc

22  was known as Sony NEC Optiarc Inc., a joint venture between Sony Corporation and NEC

23  Corporation. In 2008, Sony Optiarc reported revenues of $1.52 billion. During the Class Period,

24  Sony Optiarc manufactured, sold and/or distributed Optical Disc Drive Products to customers

25  throughout the United States either directly or through its affiliated companies.

26    16.    Sony Optiarc America Inc. ("Sony Optiarc America") is an American company

27  with its principal place of business at 1730 North First Street, San Jose, California, 95112. Sony

28  Optiarc America is a wholly-owned subsidiary of Defendant Sony Optiarc. During the Class

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW
[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                                3

1   Period, Sony Optiarc America manufactured, sold and/or distributed Optical Disc Drive Products

2   to customers throughout the Untied States, either directly or through its affiliated companies.

3       17.     Toshiba Corporation ("Toshiba") is a Japanese company with its principal place of

4   business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. Toshiba owns 51% of

5   Defendant Toshiba Samsung Storage Technology Corporation. During the Class Period, Toshiba

6   manufactured, sold and/or distributed Optical Disc Drive Products to customers throughout the

7   United States either directly or through its affiliated companies.

8       18.     Toshiba Samsung Storage Technology Corporation ("TSST") is a Japanese

9   company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo, 105-

10  8001, Japan. TSST is a joint venture between Defendants Toshiba and Samsung. Toshiba owns

11  51% of the stock in TSST and Samsung owns the remaining 49%. During the Class Period,

12  TSST manufactured, sold and/or distributed Optical Disc Drive Products to customers throughout

13  the United States either directly or through its affiliated companies.

14  **IV.    AGENTS AND CO-CONSPIRATORS**

15      19.     Defendants' conduct, as alleged herein, was authorized, ordered, or done by

16  Defendants' officers, agents, employees, or representatives while actively engaged in the

17  management and operation of Defendants' business or affairs.

18      20.     Each Defendant acted as the principal, agent, or joint venturer of or for other

19  Defendants with respect to the acts, violations and common course of conduct Plaintiff alleges

20  herein.

21      21.     On information and belief, other partnerships, corporations or other business

22  entities, presently unknown to Plaintiff, though not named as Defendants in this Complaint,

23  including, but not limited to, Koninklijke Philips Electronics N.V., Lite-On IT Corporation,

24  Philips & Lite-On Digital Solutions Corporation and Philips & Lite-On Digital Solutions USA,

25  Inc., participated in the violations alleged herein in unlawful restraint of trade and may have

26  performed acts and made statements in furtherance thereof.

27

28

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                    4

1

## V. CLASS ACTION ALLEGATIONS

2      22.     Plaintiff brings this action on behalf of himself and all others similarly situated

3   (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). The

4   Class is defined as follows:

5

6           All persons and entities who, during the period from
            approximately January 1, 2005 to the present ("Class Period"),
7           directly purchased Optical Disc Drive Products in the United
            States from any Defendant, co-conspirator, or subsidiary or
8           affiliate thereof. Excluded from the Class are Defendants, their
            parent companies, subsidiaries and affiliates, any co-conspirators,
9           and all governmental entities.

10

11     23.     Plaintiff does not know the exact size of the Class because such information is in

12  Defendants' exclusive control. Due to the nature of the trade and commerce involved, however,

13  Plaintiff believes that the Class members are numerous and geographically dispersed throughout

14  the United States rendering joinder of all Class members impracticable.

15     24.     The questions of law or fact common to the Class include but are not limited to:

16          (a)     Whether Defendants engaged in a contract, combination, and/or conspiracy

17                  to fix, raise, maintain, or stabilize prices of Optical Disc Drive Products

18                  sold in the United States;

19          (b)     Whether Defendants' conduct caused the prices of Optical Disc Drive

20                  Products sold in the United States to be at artificially inflated;

21          (c)     Whether Plaintiff and the other members of the Class were injured by

22                  Defendants' conduct and, if so, the appropriate measure of damages for

23                  Class members;

24          (d)     Whether Plaintiff and the other members of the Class are entitled to, among

25                  other things, injunctive relief and, if so, the nature and extent of such

26                  injunctive relief; and

27

28

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                    5

(e) Whether Defendants undertook actions to conceal the unlawful contract, combination or conspiracy described herein.

25. These and other questions of law and fact are common the Class and predominate over any questions affective only individual Class members.

26. Plaintiff's claims are typical of other Class members' claims. Plaintiff directly purchased Optical Disc Drive Products from one or more of the Defendants at artificially maintained, non-competitive prices achieve by Defendants' and their co-conspirators' unlawful conduct. Plaintiff and all members of the Class have sustained damage as a result of paying these artificially inflated prices for Optical Disc Drive Products achieved by Defendants' illegal conduct.

27. Plaintiff will fairly and adequately represent the interest of the Class in that Plaintiff and has no conflict with any other Class member. Plaintiff has retained competent counsel experienced in antitrust, class action and other complex litigation.

28. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

29. A class action is superior to alternative means for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Prosecution as a class action will achieve efficiencies and eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

30. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, potentially establishing incompatible standards of conduct for the Defendants.

## VI. INTERSTATE TRADE AND COMMERCE

31. During the Class Period, Defendants, or one or more of their subsidiaries or affiliated companies, sold substantial quantities of Optical Disc Drive Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this District.

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                              6

32.     During the Class Period, Defendants collectively controlled a large share of the market for Optical Disc Drive Products, both globally and in the United States.

33.     Defendants' business activities substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

## VII.    FACTS

## Background: Optical Disc Drives

34.     Optical Disc Drives were invented in 1972 by Sony and Philips Electronics. Philips discovered a technique for storing audio recordings on optical discs while Sony perfected an error correction technique. Initially, Philips and Sony focused their research efforts on different sized discs. However, in 1978 they agreed on a single format disc and error correction method. The compact disc system (or audio CD) entered the Japanese and European markets in 1982. Since then, several companies have expanded on Sony and Philips's technology to create additional CD-based applications.

35.     Once standardized CD specifications were established, the popularity of CDs, and the drives that played them, increased dramatically. By the 1990s, CD-ROM drives were a ubiquitous feature in computers on the market. Manufacturers quickly followed up on this technological advance, creating Optical Disc Drives for computers that could read and write DVDs and eventually Blu-Ray discs which hold more data than a CD-ROM.

36.     Optical Disc Drives use laser light or electromagnetic waves to read information or write data on optical discs. Specifically, data is stored in microscopic pits made from a crystalline metal allow on the discs. To read the information contained in these pits, a disc is inserted into an Optical Disc Drive which then spins the disc while a lens inside the drive guides a semiconductor leaser beam over the disc and a photodiode detects the light reflected from the disc's bumps and pits. The laser scans the disc, moving outward from the center of the disc. The photodiode reads the light's reflection as a binary code (a series of ones and zeros) that the computer translates into usable data. A disc's data capacity can be impacted in two ways: first, the more pits that can be packed on to the disc, the more data the disc can store, second, the

1  addition of layers will increase a disc's data capacity. Today, Optical Discs come in four capacity
2  sizes: 700 MB, 4.7 GB, 25 GB Single Layer, and 50 GB Dual Layer.

3  37. Some Optical Disc Drives are capable of writing, and rewriting, data onto a
4  recordable disc (*e.g.*, CD-R, DVD-R, or BD-R). To record information on a disc, a laser inside
5  the Optical Disc Drive selectively heats part of the organic photosensitive dye layer. By exposing
6  the disc to light with the laser, the reflective properties of the disc's surface change, which causes
7  the photodiode to recognize these changes as bumps and pits and read the new information on the
8  disc.

9  38. Today, Optical Disc Drives are contained in many consumer appliances such as
10  video game consoles, CD players, CD-ROMs, CD-Rs, DVD players, DVD recorders, and other
11  electronic devices. The "pits" of information contained on these optical discs vary by size: the
12  pits on CDs measure approximately .8 micrometers, but the pits on DVDs and Blu-Ray Discs
13  measure .4 micrometers and .15 micrometers respectively. Optical Disc Drives capable of
14  reading different disc formats have lasers of different wavelengths. For example, a Blu-Ray disc
15  player uses a shorter wavelength laser that has a blue-violet hue to read Blu-Ray discs.

16  39. Optical Disc Drives come in two sizes: half height, which use older technology
17  and comprise most of the market, and slim drives, which use newer technology and comprise a
18  smaller share of the market. Half height Optical Disc Drives are most commonly used in desktop
19  computer towers and tend to be thicker. Slim Optical Disc Drives are most commonly used in
20  laptop computers. As demand for laptop computers has grown, demand for slim Optical Disc
21  Drives has likewise increased and demand for slim Optical Disc Drives is expected to overtake
22  that for half-height drives over the next five years.

23  40. Although technology has advanced so that Optical Discs come in different
24  physical sizes, capacity thresholds, and data access speeds, all Optical Disc Drives possess the
25  same core technology. What's more, Optical Disc Drives were built to be "backwards
26  compatible" so that Optical Disc Drives with the latest technology can still read the first
27  generation CD-ROMS. As of 2006, DVD rewritable drives have been the most common Optical

28

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                8

1  Disc Drive used in computers. However, this drive would be capable of reading a CD
2  manufactured in the early 1990s.

3  **Optical Disc Drive Market**

4      41.     Throughout the class period, the market for optical Disc drives has been in a
5  constant state of growth. Between 2001 and 2005, the total optical Disc drive market increased
6  23% from $7.5 billion in 2001 to approximately $9 billion in 2005. The IDC estimates to total
7  worldwide revenue from Optical Disc Drive Shipments exceeded $45 billion between 2004 and
8  2008.

9      42.     Demand for Optical Disc Drives has manifested itself in hundreds of millions of
10 sales—in 2005 over 303 million Optical Disc Drives were sold.

11     43.     Likewise, Digitimes research reports that total worldwide shipments of Optical
12 Disc Drives has increased approximately 10% annually since 2002. According to Digitimes, 200
13 million Optical Disc Drives were shipped worldwide in 2002 and that number grew to more than
14 300 million by 2007. In 2009, Digitimes predicted that the demand for Optical Disc Drives
15 would continue to rise. The following chart illustrates how the total number of Optical Disc
16 Drive shipments rose steadily between 2002 and 2008 and how Digitimes expects demand to
17 continue to grown through 2011:



18

19

20

21

22

23

24

25

26

27

28

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

1    44.    In the early 2000s, Optical Disc Drives were mainly used in personal computers,

2    but by 2005, video games became a larger part of the market. Prices for Optical Disc Drives

3    declined sharply from 2000 until 2005, but as Optical Disc Drives became mores widely used in

4    video game consoles such as the Sony Playstation and Nintendo Wii, pricing began to stabilize.

5    Since 2005, the rate of price decline of Optical Disc Drives has been slowing. Between 2001 and

6    2005, the rate of price decline for Optical Disc Drives was approximately 15%; between 2005 and

7    the present, the rate of price decline is approximately 3-4%.

8    **Defendants Conspire to Set Prices for Optical Disc Drives**

9    45.    Upon information and belief, Plaintiff hereby alleges that, in the face of shrinking

10   profits from Optical Disc Drives, Defendants conspired to fix, raise, maintain, and stabilize the

11   price of Optical Disc Drives in the United States at artificially inflated and anticompetitive levels

12   in order to preserve and increase their revenues.

13   46.    The market for Optical Disc Drives exhibits numerous characteristics that suggest

14   the price stabilization beginning in 2005 resulted from an illegal conspiracy. These

15   characteristics include the high level of market concentration, the existence of numerous joint

16   ventures among Defendants, trade organizations that provide opportunities for the sharing of

17   anticompetitive information, product homogeneity, and significant barriers to entry into the

18   Optical Disc Drive market.

19   **a.    Oligopolistic Market for Optical Disc Drives**

20   47.    The Optical Disc Drives market is oligopolistic in nature and is dominated by a

21   group of manufacturers and, therefore, is conducive to the collusive conduct alleged herein. As

22   of 2006, the global Optical Disc Drives industry market shares were as follows: Lite-On IT had a

23   25.8% market share; Hitachi LG had a 23.7% market share; Toshiba Samsung had a 21.7%

24   market share; Panasonic had a 9.4% market share; Pioneer had a 5.3% market share; NEC had a

25   5.2% market share; Sony-NEC had a 5.2% market share; and Piextor had a 0.4% market share.

26   The following pie chart illustrates how a handful of players dominate the market for Optical Disc

27   Drives:

28

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                    10

1

**Optical Disc Drive Market Share: 2006**



2

3

4

5    ■ Lite-On IT
     ■ Hitachi-LG
6    □ Toshiba Samsung
     □ Panasonic
7    ■ Pioneer
     ■ Sony-NEC

8

9

10

11    48.    The Herfindahl-Hirschman Index (HHI) is a test used by the FTC and DOJ to

12  gauge market concentration. In 2006, the HHI for the Optical Disc Drive market was 1845. An

13  industry with an HHI exceeding 1,800 is deemed "highly concentrated."

14    49.    The Optical Disc Drive market has only become increasingly concentrated in

15  recent years. In 2006 three entities—Hitachi-LG, Toshiba Samsung, and Sony-NEC—controlled

16  50% of the market. As of 2008, Hitachi-LG, Toshiba Samsung and Sony controlled 67% of the

17  market.

18    50.    Defendants have taken steps to ensure that they maintain their market dominancy.

19  For example, in 2008 Sony Optiarc Inc. controlled approximately 42% of the Blu-Ray installed

20  base share. This is significant because Blu-Ray is the de-facto next-generation DVD technology.

21  The importance of controlling the Blu-Ray market is demonstrated by the fact that Sony's control

22  over the Blu-Ray market helped increase their total overall shipments of Optical Disc Drives by

23  6% in 2008. By controlling a significant share of the Blu-Ray market, Sony Optiarc ensures they

24  will remain in a position to continue their anticompetitive schemes.

25    51.    Defendants' dominance and control over the Optical Disc Drive market facilitated

26  their ability to implement their conspiracy to fix prices. Additionally, the absence of any fringe

27  sellers rendered the market for Optical Disc Drives highly susceptible to a price-fixing

28  conspiracy.

**b. Joint Ventures**

52. Defendants—competitors ostensibly—have frequently abandoned their independent efforts to achieve market dominance in favor of more cooperative endeavors, forming several long-standing joint ventures, cross licensing agreements, and business relationships. These cooperative relationships have provided repeated and ongoing opportunities to discuss pricing, capacity utilization, and other important prospective market information. As more fully described in the preceding paragraphs, relevant joint ventures include:

> o HLDS: a joint venture between Hitachi and LG Electronics conceived in November 2000 with operations starting as early as January 2001.
>
> o TSST: a joint venture between Toshiba and Samsung that consolidated their Optical Disc Drive divisions in April 2004.
>
> o Sony NEC Optiarc Inc.: a joint venture between Sony Optiarc and NEC Corp that operated between 2006 and 2008.

53. The formation of these joint ventures was the product of the exchange of information and constitutes evidence of an ongoing antitrust conspiracy. The mutually beneficial nature of Defendants' business relationships not only provided opportunities to conspire—these relationships created a financial incentive to do so.

54. The anticompetitive nature of Defendants' joint ventures is best summed up by a Sony Spokesperson who explained, when announcing the formation of Sony NEC Optiarc Inc., that the venture had been formed because: *"There was a feeling that those two complementary strengths [Sony and NEC] would make more sense in a joint venture than competing against each other."*

**c. Trade Associations & Business Organizations**

55. During the Class Period, Defendants have belonged to trade associations and business organizations that focus on the Optical Disc Drive industry. Membership in these organizations provides Defendants countless opportunities to meet and discuss pricing, capacity utilization, and other important prospective market information.

1    56.    For example, Defendants Hitachi, LG Electronics, Samsung, Sony, and Toshiba

2    are members of the steering committee at the DVD Forum. The DVD Forum is an organization

3    responsible for the licensing and distribution of DVD products whose "purpose is to exchange

4    and disseminate ideas and information about the DVD Format and its technical capabilities,

5    improvements and innovations.

6    57.    Additionally, several of the Defendants have also served in committees for the

7    International Symposium of Optical Memory ("ISOM"). Specifically, Hitachi, NEC, Sony, Lite-

8    On IT, LG Electronics all serve on committees for ISOM and Hitachi and Sony serve on multiple

9    committees. ISOM convenes at least once a year to discuss the latest technology in the Optical

10   Disc Drive industry and "provides an opportunity to share the latest information in these fields."

11   58.    Finally, several of the Defendants, including LG Electronics, Sony, and Samsung,

12   have been associated with the Optical Storage Technology Association ("OSTA"). The OSTA

13   was:

14       incorporated as an international trade association in 1992 to
     promote the use of writable optical technologies and products for

15       storage of computer data. The organization's membership
     includes optical product manufacturers and resellers from three

16       continents, representing more than 85 percent of worldwide
     writable optical product shipments. They work to shape the

17       future of the industry through regular meetings of CD/DVD, file
     interchange, market development, and magneto-optical and

18       planning committees.

19

20   **d.    Product Homogeneity**

21   59.    Optical Disc Drives are nearly entirely fungible.    The interchangeability of

22   Optical Disc Drives provides Defendants with a mechanism to implement, enforce, and oversee

23   their anticompetitive conspiracy to fix the price of Optical Disc Drives.

24   60.    Defendants ensure the interchangeability of Optical Disc Drives by participating in

25   various standards-setting organizations.    These organizations develop parameters and

26   specifications which all market-participants adhere to. For example, several Defendants work

27   closely with the Optical Storage Technology Association to develop industry wide standards.

28   And standards-setting bodies have been endemic to the industry since its inception. Other key

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                    13

1    organizations include ECMA International, the International Standardization organization

2    ("ISO"), and the International Electrotechnical organization ("IEC"). The goal of these

3    organizations and participating members is "standardizing the use of information communication

4    technology and consumer electronics."

5         61.     Patents and other intellectual property have also aided in the effort to ensure

6    interchangeability of Optical Disc Drive products as the owners of these patents actively require

7    licensees to adopt standard product specifications. For example, Philips Consumer Electronics

8    B.V. holds patents and licensing rights arising from its development of CD technology and has

9    acknowledged that: "Standardization offers many other advantages to industry as a whole. For

10    example . . . *Cooperation between industry leaders, reducing the risk for 'first-mover'*

11    *companies which pioneer new products or technologies.* (Emphasis Added.)

12         62.     Because Optical Disc Drives are entirely fungible, they are commodity products.

13    As commodity products, buyers make purchasing decisions based largely, if not exclusively, on

14    price. By participating in standards-setting organizations that helped ensure the fungibility of

15    Optical Disc Drives, Defendants paved the way for their collusive behavior.

16                        **d.     Barriers to Entry**

17         63.     Significant barriers to entry into the Optical Disc Drives market exist. To

18    compete, companies must come up with hundreds of millions of dollars for research and

19    development, licensing, and manufacturing of products. For example, Defendants hold patents

20    for various technologies necessary to manufacturing Optical Disc Drives. Defendants' ownership

21    of these patents, combined with their large market share, has allowed them to dictate who enters

22    the market and at what cost. These barriers have rendered it nearly impossible for smaller

23    manufacturers of Optical Disc Drives to compete with Defendants and overcome the effects of

24    economies of scale. Accordingly, the financial structure of the Optical Disc Drive industry has

25    allowed Defendants to implement their conspiracy by eliminating competition and artificially

26    stabilizing the prices for Optical Disc Drives without losing market share.

27

28

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

*[KEYES V. SONY CORPORATION]* CLASS ACTION COMPLAINT                              14

1  **Government Investigations**

2  64.     In October 2009, the United States Department of Justice ("DOJ") acknowledged

3  that it had commenced an investigation into anticompetitive conduct in the Optical Disc Drive

4  industry and that, in connection with that investigation, it had served subpoenas on Defendants

5  Sony Optiarc America, Hitachi-LG and TSST.

6  65.     On October 23, 2009, Defendant Sony filed its Form 6-K with the United States

7  Securities and Exchange Commission, confirming that investigation and stating:

8

9  > Sony Corporation said today that its U.S. subsidiary, Sony
Optiarc America Inc., has received a subpoena from the U.S.

10 > Department of Justice (DOJ) Antitrust Division seeking
information about its optical Disc drive business. Sony

11 > understands that the DOJ and agencies outside the United States
are investigating competition in optical Disc drives. Sony intends

12 > to cooperate fully with the DOJ and other agencies in this inquiry.

13

14  66.     In October 2009, Defendants Hitachi and Toshiba also acknowledged that their

15  Optical Disc Drive operations—Hitachi-LF and TSST—had received subpoenas from the DOJ in

16  connection with its investigation into the Optical Disc Drive industry.

17  67.     Hitachi confirmed that its Optical Disc Drive unit was under investigation by

18  European Union and Singapore regulators. Toshiba also revealed that is Optical Disc Drive unit

19  was also answering queries from authorities in other regions.

20  68.     On October 27, 2009, a DOJ spokeswoman, Gina Talamona, confirmed that: "[t]he

21  antitrust division is investigating the possibility of anticompetitive practices in the optical Disc

22  drive industry."

23  69.     The existence of a criminal DOJ grand jury investigation into the Optical Disc

24  Drive industry supports the allegations that a conspiracy existed among Defendants. DOJ

25  Antitrust Division Attorneys must believe that a crime has been committed, and prepare a detailed

26  memorandum to that effect, in order to institute a grand jury investigation. *See* Antitrust Grand

27  Jury Practice Manual, Vol. 1, Ch.1B1 ("[i]f a Division attorney believes that a criminal violation

28

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                           15

1   of the antitrust laws has occurred, he should prepare a memorandum requesting authority to

2   conduct a grand jury investigation.") And that is just the first step in the process. Following a

3   review of the memorandum, an Assistant Attorney General for the Antitrust Division must

4   approve the request for a grand jury based on the standard that a criminal violation may have

5   occurred. *See id.* Given the multiple layers of review required to implement a DOJ criminal

6   investigation, the importance of the DOJ's grand jury investigation of the Optical Disc Drive

7   market cannot be under-emphasized.

8          70.    It is also significant that the DOJ Antitrust investigation is criminal rather than

9   civil.   The Antitrust Division has explained that "[i]n general, current Division policy is to

10  proceed by criminal investigation and prosecution in cases involving horizontal, per se unlawful

11  agreements such as price fixing, bid rigging and horizontal customer and territorial allocations."

12  *See* Antitrust Division Manual Chapter III.C.5, "Standards for Determining Whether to Proceed

13  by Civil or Criminal Investigation."

14  **History of Collusion by Defendants**

15         71.    Many of the Defendants named herein have a long history of collusion in the

16  market for electronic components and technology-related products, and many are either currently

17  the subject of worldwide investigations into collusive behavior or have admitted participating in

18  cartels involving other technology and electronics products.

19         72.    For example, several of the Defendants named herein have been implicated in a

20  worldwide price-fixing conspiracy in the market for thin film transistor liquid crystal displays

21  ("TFT-LCD"). A subsidiary of LG Electronics pled guilty on December 15, 2008 to participating

22  in the TFT-LCD conspiracy and has agreed to pay a $400 million fine. On May 22, 2009, a

23  subsidiary of Hitachi, Ltd. Pled guilty to participating in the same conspiracy and agreed to pay a

24  $31 million fine. Defendants Samsung, NEC and Toshiba are also under investigation by

25  criminal authorities in the TFT-LCD litigation and are named in civil complaints.

26         73.    In addition, Defendant Samsung Electronics Company, Ltd. agreed to plead guilty

27  in 2005 to participating in a price-fixing conspiracy involving dynamic random access memory

28  ("DRAM") and agreed to pay a $300 million fine.

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT                                16

74. Defendants Samsung, LG Electronics, and Toshiba are also defendants in the *In Re: Cathode Ray Tube (CRT) Antitrust Litig.,* ND Cal, Case No. 07-5944 (MDL No. 1917).

75. Defendants NEC and Samsung are also defendants in the *In re DRAM Antitrust Litigation,* ND Cal, Case No. 02-cv-1486.

76. Defendants Hitachi, Samsung and Toshiba are also defendants in the *In re Flash Memory Antitrust Litigation,* ND Cal., Case No. 07-cv-0086.

77. Defendants Hitachi, NEC, Samsung, Sony, and Toshiba are also defendants in the *In re SRAM Antitrust Litigation,* ND Cal., Case No. 07-cv-1819, (MDL No. 1819).

## VIII. FRAUDULENT CONCEALMENT

78. Plaintiff had neither actual nor constructive knowledge of the facts supporting her claim for relief despite diligence in trying to discover the pertinent facts. Plaintiff and the other members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until October 2009, when the DOJ investigation became public. Defendants engaged in a secret conspiracy that did not give rise to the facts that would put Plaintiff or the other members of the Class on inquiry notice that there was a conspiracy to fix the prices of Optical Disc Drive Products.

79. As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims of Plaintiff and the other members of the Class arising from the anticompetitive conduct alleged in this Complaint.

## IX. CLAIM FOR VIOLATIONS OF 15 U.S.C. 1

80. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

81. Beginning no later than 2005, the exact date being unknown to Plaintiff and exclusively within Defendants' knowledge, Defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in the United States for Optical Disc Drive Products.

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

1     82.     In particular, Defendants combined and conspired to raise, fix, maintain and/or

2   stabilize the prices of Optical Disc Drive Products sold in the United States.

3     83.     As a result of Defendants' unlawful conduct, prices for Optical Disc Drive

4   Products were raised, fixed, maintained, and/or stabilized in the Unites States.

5     84.     The contract, combination or conspiracy among Defendants consisted of a

6   continuing agreement, understanding, and concerted action among Defendants and their co-

7   conspirators.

8     85.     For purposes of formulating and effectuating their contract, combination or

9   conspiracy, Defendants and their co-conspirators did those things they contracted, combined or

10   conspired to do, including:

11         (a)     participating in meetings and conversations to discuss the prices and supply

12   of Optical Disc Drive Products;

13         (b)     communicating in writing and orally to fix target prices and price ranges

14   for Optical Disc Drive Products;

15         (c)     agreeing to manipulate prices and supply of Optical Disc Drive Products

16   sold in the United States in a manner that deprived direct purchasers of free and open

17   competition;

18         (d)     issuing price announcements and price quotations in accordance with the

19   agreements reached;

20         (e)     selling Optical Disc Drive Products to customers tin the United States at

21   non-competitive prices;

22         (f)     exchanging competitively-sensitive information in order to facilitate their

23   conspiracy; and

24         (g)     agreeing to maintain or lower production capacity.

25     86.     As a result of Defendants' unlawful conduct, Plaintiff and the other members of

26   the Class were injured in their businesses and property in that they paid more for Optical Disc

27   Drive Products than they otherwise would have paid in the absence of Defendants' unlawful

28   conduct.

COHEN, MILSTEIN,
SELLERS & TOLL
P.L.L.C.
ATTORNEYS AT LAW

[*KEYES V. SONY CORPORATION*] CLASS ACTION COMPLAINT         18

## X. REQUEST FOR RELIEF

WHEREFORE, plaintiff prays that the Court enter judgment on her behalf and on behalf of the Class herein, adjudging and decreeing that:

A. This action may proceed as a class action, with Plaintiff as the designated Class representative and her counsel as Class Counsel;

B. Defendants engaged in a contract, combination and conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Plaintiff and other members of the Class were injured in their business and property as a result of Defendants' violations;

C. Plaintiff and other members of the Class shall recover damages sustained by them, as provided by the federal antitrust laws, and a joint and several judgment in favor of Plaintiff and the other members of the Class shall be entered against the Defendants in an amount to be trebled in accordance with such laws;

D. Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf, shall be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E. Plaintiff and the other members of the Class shall be awarded pre-judgment and post-judgment interest, and such interest shall be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F. Plaintiff and the other members of the Class shall recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G. Plaintiff and the other members of the Class shall receive such other or further relief as may be just and proper.

///

///

///

1    **XI.    JURY TRIAL DEMANDED**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury

3    trial as to all claims and issues so triable.

4

5    Dated: February 17, 2010                    **COHEN, MILSTEIN, SELLERS & TOLL PLLC**

6

7                                               By:    _____
                                                      Benjamin D. Brown (Bar No. 202545)
8

9                                               Kit A. Pierson
                                                Brent W. Johnson
10                                              George F. Farah
                                                1100 New York Avenue, N.W.
11                                              Suite 500, West Tower
                                                Washington, DC 20005
12                                              Telephone: (202) 408-4600
                                                Facsimile: (202) 408-4699
13                                              kpierson@cohenmilstein.com
                                                bbrown@cohenmilstein.com
14                                              bjohnson@cohenmilstein.com
                                                gfarah@cohenmilstein.com
15

16                                              Joseph J. Tabacco, Jr. (Bar No. 75484)
                                                Christopher T. Heffelfinger (Bar No. 118058)
17                                              Matthew W. Ruan (Bar No. 264409)
                                                **BERMAN DEVALERIO**
18                                              One California Street, Suite 900
                                                San Francisco, CA 94111
19                                              Telephone: (415) 433-3200
                                                Facsimile: (415) 433-6382
20                                              jtabacco@bermandevalerio.com
                                                cheffelfinger@bermandevalerio.com
21                                              mruan@bermandevalerio.com

22                                              *Counsel for Plaintiff and the Proposed Class*

23

24

25

26

27

28